UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY BARTOSZEWSKI, STEVEN
BARTOSZEWSKI, DAVID BARTOSZEWSKI, and
BART'S TRUCKING & WATER COMPANY,

                              Plaintiffs,

                   v.                                  5:09-CV-1453
                                                          (FJS/DEP)

TOWN OF HANNIBAL, RONALD GREENLEAF,
AARON CASS, DWAYNE SHEPARD, and JOE
BLANCHARD, in their individual and official
capacities, jointly and severally,

                              Defendants.
_____

**APPEARANCES**                                        **OF COUNSEL**

**LAW OFFICE OF MARK DAVID BLUM**      **MARK DAVID BLUM, ESQ.**
P.O. Box 82
Manlius, New York 13104
Attorneys for Plaintiffs

**MACKENZIE HUGHES LLP**                **JEFFREY D. BROWN, ESQ.**
101 South Salina Street
P.O. Box 4967
Syracuse, New York 13221-4967
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Currently before the Court is Defendants' motion for summary judgment on Plaintiffs' second amended complaint in its entirety.

## II. BACKGROUND

Defendant Town of Hannibal ("Town") operates the Town of Hannibal Water System ("Town Water System"), which Defendant Town regulates pursuant to its Water Use Law. Defendant Town's Water Use Law requires customers to use meters to reflect their water usage accurately. In addition, the law makes unmetered water use a misdemeanor and allows Defendant Town's representatives "to enter the premises of any customer served by the Town [W]ater System, at all reasonable hours, to read meters, examine fixtures and connections and/or make necessary repairs," *see* Dkt. No. 21-3, at § X, para. XXI, and, in the event of an emergency, "to take such emergency measures as may be deemed necessary to protect the public water supply," *see id.* at § XI.

Plaintiff Bart's Trucking & Water Company used to sell bulk water to commercial and residential customers out of two locations — 84 Mill Street in the Village of Hannibal ("Mill Street Property") and 8879 Route 104 in the Town of Hannibal ("Route 104 Property").[1] Pursuant to an agreement with Defendant Town, Plaintiffs set up a "water hydrant" in the front yard of their Mill Street Property to access water to be loaded, transported, and sold to their customers. Around the spring of 2007, because Plaintiffs had not installed a meter to monitor the hydrant's water usage, Defendant Town directed Plaintiffs to cease any and all access to water from that hydrant. Plaintiffs, however, failed to install a water meter on their Mill Street

---

[1] Defendant Town's Water Use Law provides that "[a]ll water services in the **Village** shall be metered." *See* Dkt. No. 21-3 at § VII, para. A (emphasis added). Within Defendant Town is the Village of Hannibal, which is located in the western part of Defendant Town. By its terms, the Water Use Law only requires Village residents to install a water meter. The record indicates that the Mill Street Property is located in the Village of Hannibal, but it appears that the Route 104 Property is not located in the Village; and, as such, only the Mill Street Property is subject to the law's metering requirement.

Property. Accordingly, and due to alleged public health and safety concerns regarding the hydrant, Town Water System employees — Defendants Duane Shepard (assistant water operator) and Joe Blanchard (laborer) — shut off and removed Plaintiffs' hydrant from the property.

Shortly thereafter, Defendants inspected Plaintiffs' Route 104 Property and determined that water to the property had been accessed unlawfully and, thus, temporarily shut off water service to the property. In doing so, Plaintiffs contend that Defendants arbitrarily "entered onto the Route 104 property and proceeded to dig up the driveway, bury a false curb stop and riser, and leave Plaintiffs' driveway a mess."[2] *See* Dkt. No. 33-1 at 9. Plaintiffs assert that they should have received notice and an opportunity to be heard before Defendants damaged their land. Later, however, after Plaintiffs installed a water meter on their Route 104 Property, Defendant Town reactivated their water service there.

In its Memorandum-Decision and Order dated March 31, 2011, the Court granted in part and denied in part Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and granted Plaintiffs' cross-motion to amend their amended complaint. *See generally* Dkt. No. 26. Specifically, with regard to Defendants' motion for judgment on the pleadings, the Court (1) denied Defendants' motion as to Plaintiffs' procedural due process claim; (2) granted Defendants' motion as to Plaintiffs' takings claims; (3) denied Defendants' motion as to Plaintiffs' illegal search and seizure claim;[3] (4) granted Defendants'

---

[2] A "curb stop" is the valve that a municipality installs to turn on or off a building's water service. It is "normally located at the edge of the Water District's Right-of-Way at the customer's property line on an individual water service." *See* Dkt. No. 21-3 at § IV. Since water lines are buried several feet underground, a "riser" is installed to allow access to the curb stop.

[3] The Court denied Defendants' motion for judgment on the pleadings with regard to
(continued...)

motion as to Plaintiffs' equal protection claim; (5) denied Defendants' motion as to Plaintiffs' malicious abuse of process claim under 42 U.S.C. § 1983; and (6) denied Defendants' motion as to Plaintiffs' *Monell* claim. *See id.* As such, Defendants' instant motion for summary judgment seeks judgment as a matter of law with respect to Plaintiffs' procedural due process claim, illegal search and seizure claim, malicious abuse of process claim, and *Monell* claim.

### III. DISCUSSION

#### A. Standard of review

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts, draw all inferences, and resolve all ambiguities in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). To survive summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

#### B. Procedural due process claim

To prevail on a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, the plaintiff must demonstrate both a protected liberty or property interest and the

---

[3](...continued)
Plaintiffs' illegal search and seizure claim because it "[did] not have sufficient information to determine whether Plaintiffs had a legitimate expectation of privacy in the area where the hydrant was located. Moreover, it [was] unclear whether the hydrant was on Plaintiffs' property or Defendant Town's." *See* Dkt. No. 26 at 15. The Court noted that "it [had] serious doubts as to whether Plaintiffs [would] be able to withstand a motion for summary judgment with regard to this claim." *See id.* at 15 n.10.

deprivation thereof without due process. *See McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001) (citation omitted). Here, Plaintiffs contend that Defendants acted arbitrarily and capriciously by removing their hydrant from the Mill Street Property because, by virtue of the mutually beneficial contract between Plaintiffs and Defendant Town for six years, Defendants knew that Plaintiffs did not use a water meter and did not require them to get one.

In order to identify the relevant property interest, a court must first "determine whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). A contract between a municipality and its citizens can also establish a property right. *See Pilchen v. City of Auburn*, 728 F. Supp. 2d 192, 197 (N.D.N.Y. 2010) (citation omitted). If a property right is found, the court must then determine whether that right "'constitutes a property interest for purposes of the Fourteenth Amendment.'" *O'Connor*, 426 F.3d at 196 (quotation omitted). In this case, Plaintiffs apparently contend that they had a protected property interest in their access to Defendant Town's water supply.[4]

From approximately 2001 until 2006, Plaintiffs and Defendant Town entered into an annual water supply contract under which Plaintiffs would "flush" Defendant Town's water lines and Defendants would allow Plaintiffs to purchase municipal water at a reduced rate. Plaintiffs concede that "[t]he Contracts were annual contracts and the last one known to have been executed was for the year 2006." *See* Dkt. No. 33-2 at 2. As such, although the written

---

[4] In their memorandum of law in opposition to Defendants' motion for summary judgment, Plaintiffs do not clearly identify the alleged protectable liberty or property interest at issue, stating that "Defendants' behavior throughout is a textbook definition of small town government behaving in an arbitrary and capricious manner causing constitutional injury as well as injury to personal and real property." *See* Dkt. No. 33-1 at 10.

agreements setting forth the terms of Plaintiffs' use of Defendant Town's water service may have created Plaintiffs' property interest in that service, the Court finds that no such property interest existed when Defendant Town allegedly deprived Plaintiffs of that interest in 2008, because, by Plaintiffs' own admission, a water contract did not exist in 2008.  Absent such a contract, the Court finds that Plaintiffs did not have a legitimate property interest in their access to municipal water for commercial purposes.[5]

However, the Court finds that material facts remain in dispute as to whether Plaintiffs had a protected property interest in the hydrant itself.  Indeed, in a letter dated August 14, 2008, after Defendants had already disconnected and removed the hydrant, Defendant Town's Supervisor, Ronald Greenleaf, wrote to Plaintiff David Bartoszewski regarding

> the decision of the Hannibal Town Board and the Water Department reached at the Town meeting of August 13, 2008 regarding the removable [sic] of an inoperable used fire hydrant on your former property on Mill Street. . . . You may have [the hydrant back] if you can show a bill of sale indicating conclusive proof that this is your property.

*See* Dkt. No. 33-5.

The Court additionally finds that issues of material fact remain with regard to whether Plaintiffs suffered any procedural due process violations when Defendants inspected Plaintiffs'

---

[5] Moreover, as the owners of the Mill Street Property out of which they operated their business, Plaintiffs failed to satisfy all of the requirements under Defendant Town's Water Use Law — that is, to use meters to reflect their water usage accurately.  By failing to install a meter prior to Defendants' deprivation of their alleged constitutionally protected property interest in municipal water, Plaintiffs arguably failed to even come under the purview of any independent source of state-authorized law such as Defendant Town's Water Use Law so as to give rise to a legitimate claim of entitlement to the water.  Furthermore, although a legitimate property interest can exist in a person's access to municipal water in her residence, *see Pilchen*, 728 F. Supp. 2d at 198 (citations omitted), the instant case is distinguishable in that it involves Plaintiffs' access to Defendant Town's water for commercial purposes only.

Route 104 Property and temporarily shut off their access to water until they installed a water meter on that property. The Water Use Law only required Village of Hannibal residents to install a meter, and the record indicates that the Route 104 Property is not within the Village. Accordingly, the section of Defendant Town's Water Use Law that requires all water service in the "Village" be metered might not even apply to Plaintiffs' Route 104 Property. If this is, in fact, true, Defendants' actions could very well be deemed arbitrary and capricious.

Based on the foregoing, with regard to Defendants' removal of the hydrant[6] at Plaintiffs' Mill Street Property and their deactivation of water service to Plaintiffs' Route 104 Property, the Court finds that material facts remain in dispute as to whether or not Plaintiffs had a protected property interest therein and, if so, whether Defendants afforded Plaintiffs sufficient process prior to the alleged deprivation. Accordingly, as to Plaintiffs' procedural due process claim, the Court (1) grants Defendants' motion for summary judgment with respect to Defendants' shutting off Plaintiffs' water at the Mill Street Property; (2) denies Defendants' motion for summary judgment with respect to Defendants' shutting off Plaintiffs' water at the Route 104 Property; and (3) denies Defendants' motion for summary judgment with respect to Defendants' seizure of the hydrant.[7]

## C.   Illegal search and seizure claim

"The touchstone of Fourth Amendment analysis is whether a person has a

---

[6] Plaintiffs' assertion that they received constitutionally insufficient process prior to Defendants' removal of the hydrant and that the actual removal constitutes a due process violation is very similar to Plaintiffs' illegal seizure claim, discussed below.

[7] As stated, however, the Court finds that Plaintiffs have not identified any legitimate property interest in their commercial access to municipal water for procedural due process purposes.

'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quotation omitted). The Fourth Amendment protects the home and its "'curtilage,'" but such protection does not extend to "'open fields[.]'" *Oliver v. United States*, 466 U.S. 170, 180 (1984) (citations omitted). In order to determine whether the area in question was part of the curtilage to the home, courts consider several factors, including (1) the proximity of the area to the home, (2) whether the area is enclosed, (3) the way in which the area is used, and (4) the steps taken to protect the area from observation from others. *See United States v. Dunn*, 480 U.S. 294, 301 (1987) (citations and footnote omitted). Plaintiffs do not dispute that Defendants were entitled to inspect the hydrant, but they contend that Defendants were not entitled to actually remove the hydrant from the Mill Street Property.

With regard to Plaintiffs' claim that Defendants' removal of the Mill Street Property hydrant was an illegal *search*, the Court finds that Defendants are entitled to summary judgment in this regard because, under Defendant Town's Water Use Law, it was unquestionably entitled to "search" the hydrant. However, the Court finds that issues of fact exist regarding ownership of the hydrant, *i.e.*, whether Plaintiffs or Defendants actually owned the hydrant. Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiffs' illegal *seizure* claim.[8]

---

[8] The Court notes that, even if Plaintiffs enjoyed a legitimate expectation of privacy for Fourth Amendment purposes, Defendants might have had a legitimate justification for seizing the unmetered hydrant — namely, health and safety concerns posed by the hydrant's possible "backwash" that risked contaminating the entire municipal water system. Defendant Town's Water Use Law authorized the Town Board "to take such emergency measures as may be deemed necessary to protect the public water supply," *see* Dkt. No. 21-3 at § XI, so Defendants could have found that the hydrant posed a sufficient enough risk of a public nuisance that its removal was justified. The fact that the hydrant was unmetered might have further justified its removal

(continued...)

With respect to Plaintiffs' search and seizure claim concerning the Route 104 Property, Plaintiffs contend that Defendants arrived unannounced and dug up a chunk of their land and buried a new curb stop and riser in the ground. The Court finds that Plaintiffs did not enjoy an expectation of privacy in any alleged search or seizure at the Route 104 Property because the area at issue was in close proximity to the state right-of-way and Defendants only worked on the property at Plaintiff Bartoszewski's request to fix his damaged riser and curb stop. *See* Dkt. No. 30-2, Deposition of Plaintiff David Bartoszewski dated July 20, 2010, at 32-35.

For these reasons, the Court denies Defendants' motion for summary judgment with respect to Plaintiffs' illegal *seizure* claim regarding the hydrant on the Mill Street Property but grants Defendants' motion for summary judgment on Plaintiffs' illegal search and seizure claim in all other respects.

**D.    Malicious abuse of process claim under 42 U.S.C. § 1983**

In the Second Circuit, "a claim for malicious abuse of *civil* process is not cognizable under 42 U.S.C. § 1983." *D'Onofrio v. City of New York*, Nos. 07 CV 0731, 09 CV 3970, 2010 WL 4673879, *9 (E.D.N.Y. Sept. 14, 2010) (citing *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (citing *Spear v. West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992), *cert. denied*, 506 U.S. 819, 113. S. Ct. 66, 121 L. Ed. 2d 33 (1992))). "The Second Circuit only recognizes claims for malicious abuse of *criminal* process under 42 U.S.C. § 1983." *Id.* (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

---

[8](...continued)
because Defendants could neither monitor its usage accurately nor ensure that Plaintiffs were not accessing it.

Accordingly, the Court grants Defendants' motion for summary judgment with regard to Plaintiffs' claim for abuse of civil process because civil liability under 42 U.S.C. § 1983 cannot be predicated on such a claim. *See Hangarter v. Morra*, No. 1:06-CV-0041, 2006 WL 3422197, *1 (N.D.N.Y. Nov. 27, 2006) (citations omitted).

**E.**     *Monell* **claim**

Plaintiffs do not address their *Monell* claim in their papers in opposition to Defendants' motion for summary judgment. The Court, therefore, deems Plaintiffs' *Monell* claim abandoned and grants Defendants' motion for summary judgment on this claim. *See Giles v. AT&T, Inc.*, 6:09-cv-293, 2012 WL 398990, *15 (N.D.N.Y. Feb. 7, 2012) (citations omitted).[9]

## IV. CONCLUSION

Accordingly, having carefully reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with regard to Plaintiffs' malicious abuse of process claim and *Monell* claim; and the Court further

**ORDERS** that, with regard to Plaintiffs' procedural due process claim, Defendants' motion for summary judgment is **GRANTED** with respect to Defendants' shutting off Plaintiffs' water at the Mill Street Property, **DENIED** with respect to Defendants' shutting off Plaintiffs' water at the Route 104 Property, and **DENIED** with respect to Defendants' removal of the

---

[9] Even if Plaintiffs had not abandoned their *Monell* claim, summary judgment would nonetheless be appropriate because Plaintiffs have not proven the existence of a municipal policy or custom or established a causal connection between any such policy and the alleged deprivation of their constitutional rights.

hydrant from the Mill Street Property; and the Court further

**ORDERS** that, with regard to Plaintiffs' illegal search and seizure claim, Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' illegal *seizure* claim regarding the hydrant on the Mill Street Property but **GRANTED** in all other respects;[10] and the Court further

**ORDERS** that Plaintiff's counsel shall initiate a telephone conference using a professional conferencing service with the Court and opposing counsel on **September 25,2012**, at **9:30 a.m.** to schedule the trial of this matter.

**IT IS SO ORDERED.**

Dated: September 1, 2012
       Syracuse, New York

*[signature]*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[10] As a result of this Memorandum-Decision and Order, Plaintiffs' procedural due process claim remains with respect to Defendants' shutting off Plaintiffs' water at the Route 104 Property as well as Defendants' removal of the hydrant from the Mill Street Property, and Plaintiffs' illegal seizure claim remains with respect to Defendants' removal of the hydrant from the Mill Street Property.